# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

PENNY LYNN JACKSON,

    **Plaintiff,**

v.

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF SOCIAL SECURITY,

    **Defendant.**

Case No. 17-1093-JAR

## MEMORANDUM AND ORDER

Plaintiff Penny Lynn Jackson seeks review of a final decision by the Commissioner of Social Security ("Commissioner") denying her application for both disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act.[1] Plaintiff alleges error with regard to the Administrative Law Judge's ("ALJ") assessment of her residual functional capacity. For the reasons stated below, the Court reverses and remands the Commissioner's decision.

**I.    Factual and Procedural Background**

Plaintiff applied for disability insurance benefits and supplemental security income on June 23, 2014, alleging an onset date of May 1, 2014. The Commissioner denied Plaintiff's application upon initial review and upon consideration. Plaintiff timely requested a hearing before an ALJ. She appeared and testified at a hearing before ALJ Michael R. Dayton on March 10, 2016.

---

[1] 42 U.S.C. §§ 401–434, 1381–1383f.

The ALJ issued an unfavorable decision against Plaintiff on April 6, 2016. He concluded that Plaintiff was not disabled within the meaning of the Act. The Appeals Council denied Plaintiff's request for review of the ALJ's decision, and Plaintiff timely filed an appeal with this Court pursuant to 42 U.S.C. § 405(g).

## II.     Standard for Judicial Review

Judicial review under 42 U.S.C. § 405(g) is limited to whether the ALJ's decision is supported by substantial evidence in the record as a whole and whether the ALJ applied the correct legal standards.[2] The Tenth Circuit has defined "substantial evidence" as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] In the course of its review, the Court may not re-weigh the evidence or substitute its judgment for that of the agency.[4] Additionally, the Court evaluates the ALJ's decision based solely on the reasons stated in that decision.[5]

## III.    Legal Standards and Analytical Framework

Under the Social Security Act, "disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment."[6] An individual "shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any

---

[2] 42 U.S.C. § 405(g).

[3] *Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1028 (10th Cir. 1994) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

[4] *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (citing *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

[5] Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168–69 (1962).

[6] 42 U.S.C. §§ 423(d)(1)(A), 416(i), 1382c(a)(3)(A).

2

other kind of substantial gainful work which exists in the national economy."[7] The Commissioner has established a five-step sequential evaluation process to determine whether a claimant is disabled.[8] If the ALJ determines the claimant is disabled or not disabled at any step along the way, the evaluation ends.[9]

The ALJ determined at step one that Plaintiff had not engaged in substantial gainful activity since the alleged onset date.[10] He determined at step two that Plaintiff has the following severe impairments: diabetes with neuropathy and gastric paresis, major depressive disorder, and post-traumatic distress disorder.[11] He determined at step three that Plaintiff's impairments did not meet or equal the severity of one of the listed impairments in 20 CFR 404.1520(d), 404.1525 and 404.1526.[12] Continuing, he determined that Plaintiff has the residual functional capacity ("RFC") to perform light work, except:

> [she] can lift and carry, push and pull 20 pounds occasionally, 10 pounds frequently. [She] can stand and/or walk a total of 4 hours in an 8 hour workday with normal breaks, and can sit a total of 6 hours in an 8 hour workday with normal breaks. She can climb ramps and stairs frequently; ladders, ropes and scaffolds occasionally. [She] can balance frequently; stoop occasionally; and can kneel, crouch, and crawl occasionally. She has no limitations in her ability to reach, handle, finger, and feel. [She] can have no more than frequent use of foot controls. [She] must avoid concentrated exposure to extreme cold and heat, and even moderate exposure to vibrations and hazards such as unprotected heights and hazardous machinery. [She] has the ability to understand and remember simple instructions, maintain concentration, persistence and pace to complete simple tasks in a work environment or work environment that limits contact with the

---

[7] *Id*. §§ 423(d)(2)(A); 1382c(a)(3)(B).

[8] *Thompson v. Sullivan*, 987 F.2d 1482, 1486 (10th Cir. 1993).

[9] *Id*.

[10] R. at 24.

[11] *Id*.

[12] R. at 25.

general public and coworkers to occasional, and can adapt to work environment that is well structured, routine, and repetitive.[13]

He determined at step four that Plaintiff was unable to perform her past relevant work as a certified nurse's aide, laundry worker, personal attendant/caregiver, or cashier-checker.[14] At step five, the ALJ concluded that Plaintiff was not disabled because considering her age, education, work experience, and RFC, she was capable of making a successful adjustment to jobs that exists in significant numbers in the national economy, such as mail clerk, bonder, or patcher/wirewrapper.[15]

## IV. Analysis

Plaintiff challenges the ALJ's mental RFC, arguing it is not supported by substantial evidence. She claims the ALJ erred by: 1) giving significant weight to the opinion of a non-examining State agency consultant, while giving little weight to the opinions of her treating therapist and a consultative examiner; and 2) failing to address two of her former employers' statements on their Work Activities Questionnaires.

### A. Evaluation of Medical Opinions

In *Wickliffe v. Berryhill*,[16] Judge Crow summarized the rules for weighing various medical opinions as follows:

> The opinions of physicians, psychologists, or psychiatrists who have seen a claimant over a period of time for purposes of treatment are given more weight than the views of consulting physicians or those who only review the medical records and never examine the claimant. The opinion of an examining physician is generally entitled to less weight than that of a treating physician, and the opinion of an agency physician who has never seen the claimant is entitled to the least weight of all. When a treating source opinion is inconsistent with the other

---

[13] R. at 26.

[14] R. at 32.

[15] R. at 33–34.

[16] Case No. 16-2556-SAC, 2017 WL 3149354 (D. Kan. July 25, 2017).

4

medical evidence, the ALJ's task is to examine the other medical source's reports to see if they outweigh the treating source's reports, not the other way around. Treating source opinions are given particular weight because of their unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations. If an ALJ intends to rely on a nontreating physician or examiner's opinion, he must explain the weight he is giving to it. The ALJ must provide a legally sufficient explanation for rejecting the opinion of treating medical sources in favor of non-examining or consulting medical sources.

A treating physician's opinion about the nature and severity of the claimant's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if it is not inconsistent with other substantial evidence in the record. When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician opinion. A treating source opinion not entitled to controlling weight is still entitled to deference and must be weighed using all of the following factors:

>   (1) the length of the treatment relationship and the frequency of examination;
>
>   (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;
>
>   (3) the degree to which the physician's opinion is supported by relevant evidence;
>
>   (4) consistency between the opinion and the record as a whole;
>
>   (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and
>
>   (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

After considering the above factors, the ALJ must give good reasons in his decision for the weight he ultimately assigns the opinion. If the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so.[17]

In this case, the ALJ gave significant weight to the opinion of the State agency consultant, Richard Kaspar, Ph.D., who opined that Plaintiff has mild restrictions of activities of daily living and moderate difficulties in maintaining social functioning and in maintaining

---

[17] *Id*. at *2–3 (internal citations omitted).

concentration, persistence, and pace. Conversely, he gave little weight to the opinions of Plaintiff's treating therapist and the State agency consultative examiner, who both opined that Plaintiff had significant or marked limitations in her ability to process and execute simple tasks and to interact with other people.

### 1. The Consultative Examiner's Opinion

Melvin Berg, Ph.D., a State agency consultant, examined and evaluated Plaintiff on August 6, 2014. He opined that:

> The Claimant does demonstrate significant limitations in her ability to attend to and process simple information. Her ability to retain and execute simple instructions is limited. She does not persist at simple tasks, as she is prone to give up. The Claimant's ability to accommodate to the demands of superficial interpersonal interactions is likely limited, as she is irritable. She reported easily becoming annoyed with other people and losing her last job due to her inability to get along with coworkers.[18]

The ALJ gave little weight to Dr. Berg's opinion because it was based primarily on Plaintiff's subjective complaints and was inconsistent with her reported activities of daily living and her current work activities.

Plaintiff argues that the ALJ failed to provide sufficient reasons to discount Dr. Berg's opinion. She contends Dr. Berg's opinion was based on his examination and observations of her, and not primarily on her subjective complaints. She argues that because the ALJ did not cite evidence to support his conclusion that Dr. Berg based his opinion on Plaintiff's subjective complaints, the ALJ improperly discounted his opinion. She also argues that her activities of daily living and part-time work are not inconsistent with her disabling limitations.

The Court finds a number of problems with the ALJ's assessment of Dr. Berg's opinion. First, the ALJ provided no basis to conclude that Dr. Berg's opinion was primarily based on

---

[18] R. at 625.

6

Plaintiff's subjective complaints. With respect to psychological impairments, the Tenth Circuit has recognized that:

> The practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements. A psychological opinion need not be based on solely objective "tests"; those findings "may rest either on observed signs and symptoms or on psychological tests."[19]

Where an ALJ has no legal or evidentiary basis for finding that a treating physician's opinion is based "only on claimant's subjective complaints," his conclusion to that effect is mere speculation prohibited by *McGoffin v. Barnhart*.[20] This appears to be the case here. Indeed, the evidence supports a contrary conclusion —that Dr. Berg's opinion was based on his examination and observations of Plaintiff. Dr. Berg's report indicated that he tested Plaintiff's ability to process information by having her do arithmetic, count backwards, recite the alphabet, perform two-step commands, spell backwards, and repeat four digits forward and in reverse order.[21] Based on her performance, Dr. Berg determined that Plaintiff fell within the borderline IQ range according to Wechsler norms.[22] Dr. Berg also tested Plaintiff's memory by asking her to repeat words read to her and to repeat a story with twenty-one elements. Plaintiff was only able to repeat three story elements, which placed her immediate memory within the extremely low range. Dr. Berg gave Plaintiff a GAF score of 49, which the ALJ acknowledged corresponded to serious symptoms.[23] Dr. Berg also observed her demeanor, describing Plaintiff as tense,

---

[19] *Thomas v. Barnhart*, 147 F. App'x 755, 759 (10th Cir. 2005) (quoting *Robinson v. Barnhart*, 366 F.3d 1078, 1083 (10th Cir. 2004)).

[20] 288 F.3d 1248, 1252 (10th Cir. 2002); s*ee also Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004); *Victory v. Barnhart*, 121 F. App'x 819, 823–24 (10th Cir. 2005) (finding "no support in the record for the ALJ's conclusion" that the treating physician "must have relied quite heavily upon claimant's subjective complaints").

[21] R. at 624.

[22] *Id*.

[23] *Id*.

7

depressed, mildly irritable, unsmiling, and distant, but polite and cooperative.[24] Dr. Berg's opinion was thus not based primarily on Plaintiff's subjective complaints, eliminating the ALJ's main reason for discounting Dr. Berg's opinion.

Second, although Plaintiff's daily activities provide some support to discount Dr. Berg's opinion, the ALJ's analysis was weak. He recited that Plaintiff lived alone, was independent in personal care, performed household tasks and chores occasionally, and cooked simple meals. He also noted Plaintiff concentrated well enough to enjoy activities such as watching television, reading, and sewing. The ALJ, however, conducted no specific evidentiary analysis and did not point to evidence of daily activities that suggest an ability to perform substantial gainful work.[25] Although the nature of daily activities is one of many factors to be considered by the ALJ in determining limitations, "the ALJ must keep in mind that 'sporadic performance of household tasks or work does not establish that a person is capable of engaging in substantial gainful activity.'"[26] Plaintiff's cooking consists of "cereal, tv dinners, macaroni + cheese, and roast in crock pot (sic)."[27] As for watching television, reading, and sewing, Plaintiff indicated that she did them "not to [sic] well."[28] Realistically, these activities are not the type that would show the capacity to maintain concentration, persistence, or pace on a full-time basis.[29]

---

[24] R. at 623.

[25] *Buchan v. Astrue*, No. 08-4099-JAR, 2009 WL 2176046, at *7 (D. Kan. July 21, 2009) (remanding case to the Commissioner in light of the ALJ's weak analysis with regard to daily activities and the error in using workers' compensation benefits).

[26] *Krauser v. Astrue*, 638 F.3d 1324, 1332–33 (10th Cir. 2011) (quoting *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993)).

[27] R. at 276.

[28] R. at 278.

[29] *Krauser*, 638 F.3d at 1333 (stating watching television is hardly inconsistent with allegations of pain and related concentration problems); *Hamlin v. Barnhart*, 365 F.3d 1208, 1221 (10th Cir. 2004) (finding no medical support whatsoever for the opinion that television watching constituted an activity requiring significant attention and concentration).

Finally, although an ALJ may consider part-time work as evidence that the claimant's symptoms are not as disabling as alleged, "the ALJ should be careful in placing too much emphasis on it."[30] This is particularly true here because an error exists in the ALJ's third reason to discount Dr. Berg's opinion. The ALJ found that Plaintiff working "part time as a bus monitor five days a week, 25 to 30 hours a week . . . is inconsistent with her testimony that she is mostly at home and sedentary during the day, allegedly just getting up in the morning to take her medications and then going back to bed."[31] The record contains discrepancies regarding the number of hours Plaintiff worked as a school bus monitor. In a January 2016 report, Plaintiff indicated that she worked 4 hours a day, 24 hours a week.[32] Durham School Bus Services, however, indicated that Plaintiff worked 15 to 20 hours a week.[33] At the hearing, Plaintiff initially testified that she worked 25 to 30 hours a week, but then explained that she worked about 3 hours a day, 5 days a week: "I go in, like, for an hour and a half and then I'm off, and then I go back in when school is out for, like, an hour, hour and a half."[34] Plaintiff also testified that in between the morning and afternoon bus rides, she "go[es] home and lay[s] down and go[es] to bed."[35]

The ALJ did not note the discrepancies in the work hours. He inexplicably ignored the work hours Plaintiff's employer reported. He also ignored Plaintiff's testimony that explained

---

[30] *Dettmer v. Colvin*, No. 14-2602-CM, 2016 WL 183513, at *6 (D. Kan. Jan. 14, 2016) (citing *Degan v. Barnhart*, 314 F. Supp. 2d 1077, 1087 (D. Kan. 2004); *Wells v. Colvin*, 727 F.3d 1061, 1070 (10th Cir. 2013) ("This job ... was part-time ... and does not necessarily demonstrate Ms. Wells' ability to sustain the mental demands of full-time work.")).

[31] R. at 30.

[32] R. at 333.

[33] R. at 335.

[34] R. at 46–47.

[35] R at 59.

and supported the 15 to 20 hours a week figure.[36] Because the ALJ's finding that Plaintiff worked 25 to 30 hours a week is not supported by substantial evidence, he improperly discounted Dr. Berg's opinion due to her part-time work.

As was the case in *Sitsler*,[37] the ALJ in this case mischaracterized the extent of Plaintiff's daily activities, ignoring the qualifications and limitations she reported.[38] The Court will not speculate regarding the impact of this mischaracterization or the significance of the difference in part-time hours. Instead, the Court will reverse and remand for a proper evaluation of Dr. Berg's opinion.

### 2. The Treating Therapist's Opinion

Plaintiff's treating therapist, Tamara Madden, Licensed Specialist Clinical Social Worker (LSCSW), completed a mental source statement indicating that Plaintiff had moderate and marked limitations in the areas of understanding and memory, sustained concentration and persistence, social interaction, and adaptation.[39] The ALJ gave little weight to Madden's opinion because it was inconsistent with the medical evidence and her treatment notes. The ALJ also noted that Madden's opinion of marked limitations in dealing with supervisors, coworkers, and the public was inconsistent with her current work activities as a bus monitor.

Plaintiff acknowledges that as a licensed clinical social worker, Madden was not an acceptable medical source. She argues, however, Madden's opinion is still significant because it was consistent and supported by Dr. Berg's examination and opinion. She further argues that remand is required because the ALJ did not cite specific examples of inconsistencies or explain

---

[36] *Robbins v. Barnhart*, 205 F. Supp. 2d 1189, 1201 (D. Kan. 2002) ("The ALJ may not impermissibly ignore the evidence as a whole while choosing to abstract pieces of evidence favorable to his position.").

[37] *Sitsler v. Astrue*, 410 F. App'x 112 (10th Cir. 2011).

[38] *Id.* at 117–18.

[39] R. at 66–70.

how the ability to work part-time was inconsistent with Madden's opinion regarding her limitations.

Because the Court determined that the ALJ's assessment of Dr. Berg's opinion requires remand, an analysis of the ALJ's assessment of Madden's opinion is unnecessary. Plaintiff may make her arguments in that regard to the Commissioner on remand.[40]

### B. Evidence from Former Employers

Pursuant to the parties' request, three of Plaintiff's former employers, All Saints Homecare, Golden Plains Rehab, and Durham School Bus Services, submitted answers to the Work Activities Questionnaire about Plaintiff's work performance.[41] The ALJ discussed and relied upon Durham School Bus Services' answers to conclude Plaintiff was not disabled.[42] Plaintiff argues the ALJ erred by failing to acknowledge, address, or weigh the answers provided by All Saints Homecare and Golden Plains Rehab. The latter indicated that Plaintiff worked slowly, did not get along with others, had poor time management, unacceptable attendance, and needed more supervision than others.[43] All Saints Homecare indicated Plaintiff was unable to go to a client's house one day due to high blood sugar, had issues with going to the homes of male clients, and was not eligible for rehire because of her limited work schedule and gender-specific clientele.[44]

> [T]he law in the Tenth Circuit is clear with regard to opinion testimony or statements from lay witnesses such as spouses, parents, friends, and neighbors.

---

[40] *Buchan v. Astrue*, No. 08-4099-JAR, 2009 WL 2176046, at *7 (D. Kan. July 21, 2009) (finding it unnecessary to consider plaintiff's remaining arguments relating to the evaluation of a medical opinion where the court remanded because of an improper credibility determination).

[41] R. at 244, 248, and 334.

[42] R. at 26 and 30.

[43] R at 245–47.

[44] R. at 249–51.

The decision must reflect that the ALJ included the opinion in his consideration of disability, but he need not specify the weight accorded to that opinion.[45]

Defendant concedes that the ALJ failed consider these employer statements in his opinion, but argues this error was harmless. Defendant claims that Plaintiff was not prejudiced because these former employers' criticism of Plaintiff's work performance were not significantly probative as they dealt with her inability to perform her past employment, something the ALJ acknowledged she could not do anyway.

Because these statements support Dr. Berg's and Madden's opinions regarding her limitations, they are probative. Absent discussion of this relevant evidence, the Court cannot determine whether the ALJ properly discounted their opinions in favor of Dr. Kasper's.[46] Accordingly, the Court remands this case for the ALJ to consider these statements in evaluating the various medical opinions and assessing Plaintiff's RFC.

## V.     Conclusion

Remand is necessary for a proper evaluation of the medical opinions at issue, to resolve the inconsistencies and ambiguities presented, to discuss the statements provided by All Saints Homecare and Golden Plains Rehab, and to reassess Plaintiff's RFC if warranted. The Court does not intend by this opinion to suggest the result that should be reached on remand.

**IT IS THEREFORE ORDERED** that the Commissioner's decision is reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings consistent with this Memorandum and Order.

**IT IS SO ORDERED.**

---

[45] *Croley v. Colvin*, No. 12-1101, 2013 WL 615564, at *6 (D. Kan. Feb. 19, 2013).

[46] *Cann v. Colvin*, No. 12-4064-SAC, 2013 WL 4549259, at *4–5 (D. Kan. Aug. 28, 2013) (remanding case for ALJ's failure to consider former employer's statements regarding plaintiff's ability to perform her job before and after her alleged onset of disability).

Dated: October 30, 2017

 S/ Julie A. Robinson
JULIE A. ROBINSON
CHIEF UNITED STATES DISTRICT JUDGE